IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Nicholas Polletta, individually and for a class, | ) ) ) | |
| *Plaintiff,* | ) ) ) | No. 16-cv-9492 |
| *-vs-* | ) ) | Judge Shadur |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, | ) ) ) ) | |
| *Defendants.* | ) | |

## MOTION FOR CLASS CERTIFICATION

Plaintiff, by counsel, moves the Court to order that this case may proceed

as a class action under Rule 23(b)(2) for:

> All Cook County Jail detainees who have been prescribed by a
> medical provider at the Jail and currently use a crutch, walker, or
> cane to attend court at Leighton,

and Rule 23(b)(3) for:

> All individuals who were prescribed by a medical provider at the
> Cook County Jail and used either a crutch, walker, or cane to attend
> court at Leighton from April 25, 2015, to the date of judgment.

Grounds for this motion are as follows:

### I.    The Challenged Policy

Plaintiff Nicholas Polletta attends court periodically at Leighton in

connection with a criminal case. Plaintiff is substantially limited in the activity of

moving from place to place and is prescribed a cane to ambulate to Leighton by

-1-

the Jail's medical providers. Plaintiff Polletta and the putative class contend that they attend court each month in connection with their underlying criminal case at the Leighton Criminal Courthouse ("Leighton") and they are subject to ADA and Rehabilitation Act violations because they must travel up and down steep ramps that violate the ADA Structural Standards.

## II. Plaintiff's "Right to Have a Class Certified"

Rule 23 of the Federal Rules of Civil Procedure permits a litigant to "bring his [or her] claim as a class if he [or she] wishes." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 559 U.S. 353, (2010). Upon showing that the case satisfies the requirements of Rule 23, "the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 403 (1980). While Rule 23(b) begins that "[a] class action *may* be maintained if Rule 23(a) is satisfied," the permissive *"may"* refers to the plaintiff, rather than to the court: "The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff." *Shady Grove,* 559 U.S. at 400.

Rule 23 "empowers a federal court 'to certify a class in each and every case' where the Rule's criteria are met." *Shady Grove,* 559 U.S. at 399 (internal citation omitted). Moreover, Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.* at 398. Plaintiff shows below that this case satisfies each criteria of Rule 23(a) and Rules 23(b)(2) and (3) and should therefore proceed as a class action.

### III.    The Ascertainable Class

Rule 23, as applied by the Seventh Circuit, requires that the Court and the parties be able to "readily ascertain" the identity of class members. *Jamie S. v. Milwaukee Public Schools,* 668 F.3d 481, 495-96 (7th Cir. 2012). The Sheriff's Jail Management System, a computer database, maintains (1) a list of all inmates who attend Leighton, and (2) a list of all inmates with mobility disabilities prescribed a cane, crutch, or walker by the medical staff. (Exhibit 1, Rivero-Canchola Dep 5:9-8:10, 32:6-22.)

The Jail Management System allows the identification of the members of the putative class. The Jail Management System makes the class ascertainable. Plaintiff show below that the proposed class satisfies each of the requirements of Rule 23(a) and should be maintained as a class action under Rule 23(b)(2) and (3).

### IV.    The Common Contention Capable of Classwide Resolution

This case presents two questions of wide application:

First, whether the ramps in the tunnel between the Cook County Jail and the Leighton Courthouse's lower-level staging area comply with the current ADA slope or landing requirement,[1] and, if not,

Second, whether defendants provide plaintiff and members of the putative class a reasonable accommodation navigating the ramps.

---

[1] Defendant Cook County's ADA Compliance Project Director Michael Gumm concedes the Leighton ramps do not satisfy the ADA Structural Standards for slope and that, at least for wheelchair users, defendants must provide a reasonable accommodation to navigate these ramps. (Exhibit 2, Gumm Dep 5:22-6:2, 85:8-88:5, 109:3-111:6.)

These common issues are precisely the type of matters appropriate for adjudication on a class basis. In *Wal-Mart Stores, Inc. v. Duke,* 131 S.Ct. 2541 (2011), the Court held that Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that the proposed class must present a "common contention" that is "of such a nature that is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. The Seventh Circuit analyzed *Wal-Mart* in *McReynolds v. Merrill Lynch,* 672 F.3d 482 (7th Cir. 2012), and held that when a plaintiff's challenge is to policy decisions "by top management," the case presents "issues common to the entire class and [is] therefore appropriate for class-wide determination." *Id.* at 489.

In *Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *5, (N.D. Ill. 2015 (Gettleman, J.) the parties agreed the Leighton ramps did not comply with the "current ADA slope or landing requirements, and that a reasonable accommodation is for defendants' employees to push wheelchair-using detainees up and down the ramps." Here, whether an accommodation for the putative class is required under the ADA and Rehabilitation Act is precisely the type of issue "appropriate for class-wide determination."

## V.    The Proposed Class Satisfies Rule 23(a), (b)(2), and (b)(3)

A party seeking to maintain a case as a class action must show that the proposed class satisfies each of the requirements of Rule 23(a) and that the

proposed class satisfies one of the subsections of Rule 23(b). *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010). This case satisfies each of these requirements.

### a. Numerosity

Rule 23(a)(1) requires that the proposed class must be "so numerous that joinder of all members is impracticable." The named plaintiff is not required "to specify the exact number of persons in the class," *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989), but must provide a reasonable estimate of the number of class members. *Miller v. Spring Valley Properties,* 202 F.R.D. 244, 247 (C.D.Ill. 2001). This rule is illustrated in *Phipps v. Sheriff of Cook County,* 249 F.R.D. 298 (N.D.Ill. 2008). There, the plaintiff had identified 12 class members. *Id.* at 300. The court concluded that this evidence supported the "sensible estimate" that the class would consist of more than fifty persons and thereby satisfied the numerosity requirement of Rule 23(a)(1). *Id.*

The general rule is that a class of 40 satisfies the numerosity requirement of Rule 23(a)(1). *George v. Kraft Foods Global,* 270 F.R.D. 355, 365 (N.D.Ill. 2010). Based on experience, plaintiff believes that the proposed class consists of far more than forty persons.[2]

---

[2] In the event defendants challenge numerosity, plaintiff will seek leave to supplement his motion for class certification with the Jail Management System's list of all inmates prescribed a walker, crutch, or cane from April 25, 2015 to the present who attended court at Leighton. Although defendants have not yet provided this information to plaintiff, ADA Compliance Officer Sabrina Rivero-Canchola testified this information is readily available because she runs "a search every day" with the Jail Management System. (Exhibit 1, Rivero-Canchola Dep 4:12-18, 32:12-22.)

Defendants provided plaintiff Polletta a cane to attend Leighton on April 13, 2017. (Exhibit 3, Polletta Dec ¶ 4.) Putative class member Rashee Grant used crutches to attend Leighton on April 11, 2017. (Exhibit 4, Grant Dec ¶¶ 3-4.) Another putative class member, David Rivera, also used an ambulatory aid to attend Leighton in 2015. (Exhibit 5, Rivera Dec ¶¶ 2-5.)

In *Lacy v. Dart*, defendants conceded in opposition to summary judgment that, at the time, 60 detainees at the Cook County Jail were provided wheelchairs by the medical staff. *Lacy*, 2015 WL 1995576, at *2. Here, it is safe to assume that over the past two years more than 40 inmates attended court at Leighton with a cane, crutch, or walker. When addressing numerosity, the Court "may rely on common sense assumptions and reasonable inferences when ascertaining the size of the class." *Beley v. City of Chicago*, 2015 WL 8153377, at *2 (N.D. Ill. 2015) (Blakey, J.).

The proposed class therefore satisfies the numerosity requirement of Rule 23(a).

### b. Commonality

A threshold question is whether the Leighton ramps are compliant with the ADA and Rehabilitation Act's structural requirement. If Leighton, because of its age, need not meet the statutory technical requirements, as held by the district court in *Lacy*, 2015 WL 5921810, at *5, another common question is whether defendants' policies and actions sufficiently overcome structural barriers so as to satisfy the ADA and Rehabilitation Act. These were the same common question of

law and fact that the *Lacy* court determined "is sufficient to establish the requirements of Rule 23(a)(2)." *Lacy*, 2015 WL 1995576, at *3-4.

### c. Typicality

Typicality under Rule 23(a)(3) is satisfied if a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).

Plaintiff and the putative class allege the Leighton ramps are not compliant with the ADA and Rehabilitation Act and that defendants have not provided adequate accommodations to overcome this non-compliance. Because plaintiff and members of the putative class were each prescribed an ambulatory aid, namely a walker, cane, or crutch to attend Leighton because of a substantial impairment moving from place to place, "they experience the same structural barriers and accommodations defendants allegedly provide." *Lacy*, 2015 WL 1995576, at *4. These were the same factors considered by the *Lacy* court in finding plaintiffs satisfied typicality. *Id.* at *4-5.

The discrimination experienced by plaintiff Polletta is typical of that experienced by putative class members. Rashee Grant and David Rivero were each provided an ambulatory aid to attend Leighton and were required to navigate the ramps without assistance. (Exhibits 3-5.)

This claim thus meets the typicality requirement of Rule 23(a):

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.,* 472 F.3d506, 514 (7th Cir.2006).

### d. Adequacy of Representation

Plaintiff and the putative class are represented by competent counsel and they will "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). The named plaintiff is (1) represented by competent counsel,[3] (2) has "a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.* 257 F.R.D. 471, 480 (N.D.Ill. 2009). Plaintiff therefore satisfies the adequacy of representation requirement of Rule 23(a)(4).

### e. Application of Rule 23(b)(2)

A Rule 23(b)(2) class is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting to the

---

[3] Attorney Thomas G. Morrissey has been class counsel in several civil rights cases, including: *Hvorick v. Sheahan*, 92 C 7324 (Shadur, J.); *Watson v. Sheahan*, 94 C 6891 (Bucklo, J.); *Gary v. Sheahan*, 96 C 7294 (Coar, J.); *Thompson v. City of Chicago*, 01 C 6916 (Nolan, M.J.); *Bullock v. Sheahan*, 04 C 1051 (Bucklo, J.); *Jackson v. Sheriff*, 06 C 493 (Coar, J.); *Streeter v. Sheriff*, 08 C 732 (Castillo, C.J.); *Phipps v. Sheriff*, 07 C 3889 (Bucklo, J.); *Parish v. Sheriff*, 07 C 4369 (Lee, J.); *Zaborowski v. Sheriff*, 08 C 6946 (St. Eve. J.); *Smentek v. Sheriff*, 09 C 529 (Lefkow, J.); *Lacy v. Sheriff*, 14 C 6259 (Gettleman, J.); *Beley v. City of Chicago*, 12 C 9714 (Blakey, J.); and *Bell v. Sheriff*, 14 C 8059 (Castillo, C.J.).

Attorney Patrick W. Morrissey has been appointed class counsel in *Lacy v. Sheriff,* 14 C 6259 (Gettleman, J.), *Beley v. City of Chicago*, 12 C 9714 (Blakey, J.), and *Bell v. Sheriff*, 14 C 8059 (Castillo, C.J.).

class as a whole." Rule 23(b)(2). This rule is especially applicable to civil rights cases. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Alliance to End Repression v. Rochford*, 565 F.2d 975, 979 n.9 (7th Cir. 1977).

In *Lacy*, the district judge entered "mandatory injunctive relief" in favor of the plaintiff class on October 8, 2015 and directed the Sheriff to amend "Sheriff's Order 11.14.35.0" with "language ensuring that wheelchair-using detainees are consistently assisted when maneuvering courthouse ramps that are not compliant with the ADA." *Lacy*, 2015 WL 5921810, at *13-14. On January 5, 2016, the *Lacy* court entered an order, attached as Exhibit 6, with the precise language for Sheriff's Order 11.14.35.0 to ensure wheelchair-using detainees are accommodated when navigating the ramps.

Defendants, however, did not implement any such order to accommodate other disabled inmates who require the assistance of a cane, crutch, or walker to navigate the Leighton ramps. Plaintiff is currently subjected to the challenged policies and has standing to seek injunctive relief. *Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir. 1989).

### f. Rule 23(b)(3): Predominance and Superiority

"Analysis of predominance under Rule 23(b)(3) 'begins, of course, with the elements of the underlying cause of action.'" *Messner v. Northshore University Health Systems,* 669 F.3d 802, 815 (7th Cir. 2012), quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011). The predominance requirement, although similar to questions of commonality and typicality, is more

demanding than either of those Rule 23(a)(2) requirements. *Amchem Products, Inc.*, 521 U.S. at 623-24. When a proposed class challenges a uniform policy, as here, the validity of that policy tends to be the predominant issue in the litigation. *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 614 (N.D. Ill. 2009); *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D.Ill. 2008).

Here, the claim of plaintiff and the putative class turns on the uniform manner in which the defendants accommodate inmates who use a cane, crutch, or walker to navigate the Leighton ramps, and that issue predominates over any individual issues. Likewise, in *Streeter*, 256 F.R.D. at 614, the court collected cases finding the predominance requirement satisfied when the proposed class challenged a uniform policy. Similar to here, the uniform policy in *Streeter* was the Sheriff of Cook County's group strip search policy for male detainees returning to Division 5 of the Cook County Jail after court proceedings. *Id.* at 611, 614. Defendants' purported policy to provide no assistance to individuals who use a cane, crutch, or walker to navigate the Leighton ramps thus predominates in this litigation.

In addition to satisfying the predominance prong of Rule 23(b)(3), a class action is superior to other methods for adjudicating the claims of the members of the proposed class. The legality of defendants' policy to require inmates prescribed a cane, crutch, or walker to navigate, without assistance, the Leighton ramps should be resolved in "one fell swoop," *Mejdrich v. Met-Coil Systems Corp.,* 319 F.3d 910, 911 (7th Cir. 2003). Whatever individual variations there

might be, "it is important not to let a quest for perfect evidence become the enemy of good evidence." *Messner,* 699 F.3d at 808.

## VI. Conclusion

For the reasons above stated, plaintiff requests that the Court order that this case proceed as a class action pursuant to Rule 23(b)(2) for:

> All Cook County Jail detainees who have been prescribed by a medical provider at the Jail and currently use a crutch, walker, or cane to attend court at Leighton

and Rule 23(b)(3) for:

> All individuals who were prescribed by a medical provider at the Cook County Jail and used either a crutch, walker, or cane to attend court at Leighton from April 25, 2015, to the date of judgment.

Respectfully submitted,

/s/  Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey
10350 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900

*Attorneys for Plaintiff*

-11-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nicholas Polletta, | ) |
| | ) |
| *Plaintiff,* | ) |
| | )   No. 16-cv-9492 |
| *-vs-* | ) |
| | )   Judge Shadur |
| Thomas Dart, Sheriff of Cook | ) |
| County, and Cook County, Illinois, | ) |
| | ) |
| | ) |
| *Defendants.* | ) |

## PLAINTIFF'S INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Portion of deposition from Sabrina Rivera-Canchola, the Sheriff's ADA Compliance Officer |
| 2 | Portion of deposition from Michael Gumm, the Cook County ADA Compliance Project Director |
| 3 | Nicholas Polletta Declaration |
| 4 | Rashee Grant Declaration |
| 5 | David Rivera Declaration |
| 6 | Order in *Lacy v. Dart*, 14 C 6259 dated January 5, 2016 |

Transcript of the Testimony of
**SABRINA RIVERO-CANCHOLA**

**Date:** April 13, 2017

**Case:** VAIA VS. DART

**TOOMEY REPORTING**
312-853-0648
toomeyrep@sbcglobal.net
www.toomeyreporting.com

---

Page 2

```
 1    APPEARANCES:
 2        THOMAS G. MORRISSEY, LTD.
 3        BY:  MR. PATRICK W. MORRISSEY
          10150 South Western Avenue
 4        Chicago, Illinois  60643
          (773) 233-7900
 5        patrickmorrissey1920@gmail.com
 6            Representing the Plaintiff;
 7
          STATE'S ATTORNEY OF COOK COUNTY, ILLINOIS
 8
 9        BY:  MR. JOHN POWER
          50 West Washington Street
          Room 500
10        Chicago, Illinois  60602
          (312) 603-4370
11        john.power@cookcountyil.gov
12            Representing Thomas Dart;
13
          STATE'S ATTORNEY OF COOK COUNTY, ILLINOIS
14
          BY:  MS. JACQUELINE CARROLL
15        69 West Washington Street
          Suite 2030
16        Chicago, Illinois  60602
          (312) 603-3474
17        jacqueline.carroll@cookcountyil.gov
18            Representing Cook County, Illinois.
19
20
21
22
23
24
```

---

Page 1

```
          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION

RICK VAIA,                  )
                            )
          Plaintiff,        )
                            )
     vs.                    ) No. 16 CV 06273
                            )
THOMAS DART, SHERIFF OF     )
COOK COUNTY, COOK           )
COUNTY, ILLINOIS and        )
SABRINA RIVERO-CANCHOLA,    )
                            )
          Defendants.       )
```

     The deposition of SABRINA RIVERO-CANCHOLA,
called for examination pursuant to the Rules of
Civil Procedure for the United States District
Courts pertaining to the taking of depositions,
taken before EMILY TOMALA, CSR, a notary public
within and for the County of Cook and State of
Illinois, at 10150 South Western Avenue,
Chicago, Illinois, on the 13th day of April,
2017, at the hour of 12:30 o'clock p.m.

---

Page 3

```
 1                   I N D E X
      WITNESS                        EXAMINATION
 2
      SABRINA RIVERO-CANCHOLA
 3
        By Mr. Morrissey:              4-143
 4
 5
 6
 7
 8
 9
10
11
                   E X H I B I T S
12    NUMBER                     MARKED FOR ID
13    Plaintiff's Deposition Exhibit
        No. 1                         37
14      No. 2                         56
        No. 3                         72
15      No. 4                        108
        No. 5                        119
16
17
18
19
20
21
22
23
24
```

Exhibit 1 Page 1

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 4

1     (Whereupon, the witness was duly
2     sworn.)
3     MR. MORRISSEY:  This is the deposition
4     of Sabrina Rivero-Canchola taken pursuant to
5     notice and continued to this day.  My name
6     is Pat Morrissey.  I represent the plaintiff.
7     SABRINA RIVERO-CANCHOLA,
8     having been first duly sworn, was examined and
9     testified as follows:
10     DIRECT EXAMINATION
11    BY MR. MORRISSEY:
12     Q.   Please state your name.
13     A.   **Sabrina Rivero-Canchola.**
14     Q.   Is it my understanding you have to
15    leave at 3:00 o'clock today?
16     A.   **It is.**
17     Q.   What is your present title?
18     A.   **ADA compliance officer.**
19     Q.   What are your responsibilities?
20     A.   **My responsibilities are to ensure that**
21    **the sheriff's office complies with the Americans**
22    **With Disabilities Act.**
23     Q.   How do you perform that function?
24     A.   **Through a variety of means, making sure**

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 6

1     least one major life activity?
2     A.   **We have a jail management system in**
3     **which a medical professional places a variety of**
4     **alerts that would signal to myself and security**
5     **staff that an inmate might have difficulty doing**
6     **something.**
7     Q.   Tell me about the different types of
8     alerts the medical staff can put in the jail
9     management system to notify you.
10     MR. POWER:  Objection, form.  You can
11     answer.
12    BY THE WITNESS:
13     A.   **Tell you about all the alerts?**
14    BY MR. MORRISSEY:
15     Q.   Yes.
16     A.   **I couldn't.  There's hundreds.**
17     Q.   As the ADA compliance officer, do you
18    make any determination whether the medical
19    professionals are correct in assessing whether
20    the physical impairment substantially limits one
21    or more life activities of an inmate?
22     A.   **I don't understand your question.  Can**
23    **you rephrase it?**
24     Q.   As the sheriff's ADA compliance

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 5

1     **inmates with disabilities are accommodated.**
2     Q.   What is an inmate with a disability?
3     MR. POWER:  Objection to the extent it
4     calls for a legal conclusion.
5    BY THE WITNESS:
6     A.   **A disability is defined within the**
7     **Americans With Disabilities Act.**
8    BY MR. MORRISSEY:
9     Q.   Tell me what your understanding of an
10    inmate with a disability is.
11     A.   **Disability is defined as an individual**
12    **that has a mental or physical impairment that**
13    **substantially limits one or more life**
14    **activities.**
15     Q.   As the ADA compliance officer, how do
16    you assess whether an inmate has a physical
17    impairment that substantially limits one major
18    life activity?
19     A.   **That's not my determination to make.**
20     Q.   Who makes that?
21     A.   **A medical professional.**
22     Q.   As the sheriff's ADA compliance
23    officer, how are you told that an inmate has a
24    physical impairment that substantially limits at

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 7

1     officer, do you have any involvement in
2     assessing whether the medical professionals are
3     correct in identifying an inmate has a physical
4     impairment that substantially limits one or more
5     life activities?
6     A.   **Is it your question that I evaluate**
7     **whether a medical professional has made a**
8     **correct diagnosis?**
9     Q.   Correct.
10     A.   **No, I'm not trained to do that.**
11     Q.   Tell me about different alerts medical
12    professionals can make in the jail management
13    system to notify the sheriff's office that an
14    inmate has a physical impairment that
15    substantially limits his or her ability to move
16    from place to place.
17     MR. POWER:  Objection, asked and
18     answered, misstates prior testimony.
19    BY THE WITNESS:
20     A.   **As I mentioned, there are hundreds of**
21    **different types of alerts, but an alert can be**
22    **placed in the system that an inmate should be**
23    **given access to an auxiliary aide would be one**
24    **example.**

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 2

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 8

1  BY MR. MORRISSEY:

2      Q.   What is an auxiliary aide?

3      A.   It's an aide to mobility or an aide to

4  impairment.

5      Q.   So if a medical professional determines

6  that an inmate has a requirement for an

7  auxiliary aide, what do you as a sheriff's ADA

8  compliance officer do with that knowledge?

9      A.   I ensure that they have access to that

10  aide at appropriate times.

11     Q.   Do you use that determination by the

12  medical professional to determine where that

13  inmate is housed?

14     A.   I don't determine where people are

15  housed.

16     Q.   Who determines where inmates are housed

17  at the Cook County Jail who have medical alerts

18  that allow them to be provided with an auxiliary

19  aide at the jail?

20     A.   Housing is determined by medical

21  classification.

22     Q.   What is medical classification?

23     A.   Every inmate receives an intake

24  screening and is given a medical and a

---

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 33

1  as ADA compliance officer.

2      Q.   What do you do after you run that

3  search daily?

4      A.   I meet with any new detainees that have

5  those alerts.

6      Q.   Do you meet with detainees who have a

7  wheelchair for long distance only?

8      A.   Yes, I do.

9      Q.   Do you document that interaction with

10  the detainee?

11     A.   Do I document it?  No.

12     Q.   Do you keep any notes about your

13  interaction with that detainee?

14     A.   No.

15     Q.   Why do you meet with the detainees who

16  have these alerts?

17     A.   To introduce myself to them, to let

18  them know that they can reach out to me if

19  they're having any issues getting around the

20  living unit or any issues in general.

21     Q.   When an inmate with an alert comes into

22  the jail on the new and you identify that he is

23  not in one of the cells as an ADA designated

24  cell, do you do anything with that information?

---

SABRINA RIVERO-CANCHOLA
April 13, 2017

Page 32

1      Q.   When did you review the complaint?

2      A.   When it was filed.

3      Q.   Did you review the request for

4  production?

5      A.   No.

6      Q.   Are you notified when inmates with

7  disabilities enter the Cook County Jail?

8      A.   With what kind of disability?

9      Q.   Mobility disabilities?

10     A.   If an alert is placed in the jail

11  management system, the C-COMS system, then, yes.

12     Q.   What alerts would cause you to be

13  notified?

14     A.   I think we already covered that, an

15  alert for an aide to impairment such as

16  wheelchair, walker, cane, crutch, someone who's

17  deaf, hearing impaired, blind, has a prosthetic,

18  or is a paraplegic.

19     Q.   How are you notified through the

20  sheriff's computer system when those alerts are

21  placed by medical staff?

22     A.   I run a search every day.

23     Q.   How long have you been doing that for?

24     A.   Since the beginning of my taking over

Exhibit 1 Page 3

Transcript of the Testimony of
**MICHAEL GUMM**

**Date:** May 11, 2016

**Case:** WADE VS. DART

**TOOMEY REPORTING**
Phone: 312-853-0648
Fax: 312-853-9705
Email: toomeyrep@sbcglobal.net
Internet: http://www.toomeyreporting.com/

---

MICHAEL GUMM
May 11, 2016

Page 2

1   A P P E A R A N C E S :

2

3          THE LAW OFFICES OF:
           THOMAS G. MORRISSEY

4      BY:  MR. THOMAS G. MORRISSEY
           MR. PATRICK MORRISSEY

5          10150 South Western Avenue
           Chicago, Illinois 60643

6          (773) 233-7900
           tgmorrisseylaw@gmail.com

7          patrick1920@gmail.com

8          Appeared on behalf of the
           Plaintiff;

9          THE LAW OFFICES OF:

10         COOK COUNTY STATE'S ATTORNEY
           CIVIL ACTIONS BUREAU

11

12     BY:  MS. JACQUELINE B. CARROLL
           500 Daley Center

13         Chicago, Illinois 60602
           (312) 603-5450

14         jcarroll@cookcountygov.com

15         Appeared on behalf of the
           Defendant, Cook County;

16         THE LAW OFFICES OF:
           COOK COUNTY STATE'S ATTORNEY

17         CIVIL ACTIONS BUREAU

18     BY:  MR. NICHOLAS CUMMINGS
           500 Daley Center

19         Chicago, Illinois 60602
           (312) 603-6638

20         nicholas.cummings@cookcountyil.gov

21         Appeared on behalf of the
           Defendant, Sheriff Thomas

22         Dart;

23

24

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARL WADE,                    )
                              )
        Plaintiff,            )
                              )
    vs.                       )  No. 15-cv-10644
                              )
THOMAS DART, Sheriff of       )
Cook County, and COOK         )
COUNTY, ILLINOIS,             )
                              )
        Defendants.           )

        This is the deposition of MICHAEL GUMM,
called by the Plaintiff for examination, taken
pursuant to the Federal Rules of Civil
Procedure for the United States District Courts
pertaining to the taking of depositions, taken
before PEGGY A. ANDERSON, a Certified Shorthand
Reporter of the State of Illinois, at Daley
Center, Suite 500, Chicago, Illinois, on
May 11, 2016, at 10:30 a.m.

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 3

1                    I N D E X

    WITNESS                           PAGE
2
    MICHAEL GUMM
3
    DIRECT EXAMINATION BY
4   MR. MORRISSEY:                    5-210

5   CROSS-EXAMINATION BY
    MR. CUMMINGS:                   211-221
6
    CROSS-EXAMINATION
7   MS. CARROLL:                    221-224

    REDIRECT EXAMINATION BY
8   MR. MORRISSEY:                  224-236

9
    RECROSS-EXAMINATION BY
10  MS. CARROLL:                    236-237

11  FURTHER REDIRECT EXAMINATION BY
    MR. MORRISSEY:                  237-238

12

13

14

15

16

17

18

19

20

21

22

23

24

TOOMEY REPORTING
312-853-0648

Exhibit 2 Page 1

MICHAEL GUMM
May 11, 2016

Page 4

```
 1              E X H I B I T S
 2   MARKED                              PAGE
 3   PLAINTIFF'S EXHIBIT NO. 1             6
 4   PLAINTIFF'S EXHIBIT NO. 2            36
 5   PLAINTIFF'S EXHIBIT NO. 3            38
 6   PLAINTIFF'S EXHIBIT NO. 3-A          45
 7   PLAINTIFF'S EXHIBIT NO. 4            51
 8   PLAINTIFF'S EXHIBIT NO. 5            66
 9   PLAINTIFF'S EXHIBIT NO. 6            86
10   PLAINTIFF'S EXHIBIT NO. 7           116
11   PLAINTIFF'S EXHIBIT NO. 8           118
12   PLAINTIFF'S EXHIBIT NO. 9 (Not marked)
13   PLAINTIFF'S EXHIBIT NO. 10          139
14
15
16      C E R T I F I E D   Q U E S T I O N S
17
18   LINE                               PAGE
19   14                                   17
20   20                                   32
21   18                                   33
22   5                                    34
23   6                                    73
24                     *******
```

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 6

```
 1   Cook County government?
 2        A    ADA compliance project director.
 3        Q    How long have you been with the Cook
 4   County government?
 5        A    Coming up on two years in June.
 6        Q    Are you licensed in the state of
 7   Illinois as an architect?
 8        A    No.
 9        Q    Have you taken any examinations in
10   the State of Illinois to become licensed?
11        A    No.  Since I'm licensed in other
12   states, I don't have to take the examination
13   again.
14        Q    Have you sought to become licensed in
15   the state of Illinois?
16        A    Not yet, no.
17                    (WHEREUPON, Plaintiff's
18                    Exhibit No. 1 was marked
19                    for identification.)
20   BY MR. MORRISSEY:
21        Q    Showing you what is being marked as
22   Plaintiff's Exhibit Number 1 --
23             MR. MORRISSEY:  I don't have -- I
24        have a couple copies.  I have one copy,
```

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 5

```
 1                  (WHEREUPON, the witness
 2                  was first duly sworn.)
 3            MR. MORRISSEY:  This is the
 4   deposition of Michael Gumm taken pursuant
 5   to notice and continued at the State's
 6   Attorney's office at their request that
 7   we're here today.
 8            Mr. Gumm, I'm going to ask you a
 9   series of questions in regards to your
10   position with the County.  I'd ask you to
11   answer orally so the court reporter can
12   take down your response; is that
13   understood?
14            THE WITNESS:  Yes, it is.
15   WHEREUPON:
16                  MICHAEL GUMM,
17   called as a witness herein, having been first
18   duly sworn, was examined and testified as
19   follows:
20         D I R E C T   E X A M I N A T I O N
21            BY MR. MORRISSEY:
22        Q    State your full name for the record?
23        A    Michael Gumm, G-u-m-m.
24        Q    What is your current title with the
```

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 79

```
 1   BY THE WITNESS:
 2        A    Yes, I did.  I didn't measure.
 3   BY MR. MORRISSEY:
 4        Q    You did not measure?
 5        A    I did not measure anything on that
 6   visit.
 7        Q    So you don't know.  Were the public
 8   areas for Courtroom 101 accessible in June of
 9   2014?
10        A    I don't know.
11        Q    Have you ever visited the public
12   areas of the Leighton Court Building as the ADA
13   director for the County?
14        A    I have been there, but I have not
15   visited them for any ADA assessment.
16        Q    Do you know whether or not the -- as
17   the ADA director, whether the public washrooms
18   in Leighton are ADA accessible?
19        A    I know that there are some, but I
20   can't tell you which ones.
21        Q    When you visited in late June of
22   2014, did you visit in addition to Courtroom
23   101's holding cell, did you visit any other
24   holding cells in Leighton?
```

TOOMEY REPORTING
312-853-0648

Exhibit 2 Page 2

Page 80

1     **A**    Yes.

2     Q    What other holding cells did you

3    visit?

4     **A**    **We started at the bridge, the lower**

5    **level. We went through the first floor, third**

6    **floor and the fourth or fifth floor. I'm not**

7    **sure which.**

8     Q    Did you inspect the holding -- or did

9    you visit the holding cells on the first, third

10   and fifth floors?

11    **A**    **I think I just said that.**

12    Q    Did the holding cells have toilets

13   that were in compliance with the 2010

14   standards?

15        MS. CARROLL: I'm going to object in

16   the sense that Mr. Wade did not attend any

17   of these. He was in Courtroom 704 I

18   believe it was. So therefore, there is

19   absolutely no relevance to this line of

20   questioning.

21        MR. MORRISSEY: There certainly is.

22   Are you going to concede --

23        MR. CUMMINGS: How is it relevant?

24        MR. MORRISSEY: Let me finish mine.

Page 81

1    Are you going to concede that the County

2    had notice that the Leighton Court Building

3    was not accessible --

4        MS. CARROLL: No.

5        MR. MORRISSEY: -- in August and

6    September of 2014?

7        MS. CARROLL: No.

8        MR. MORRISSEY: Then I should be

9    allowed to ask him these questions.

10       MS. CARROLL: No, because there's no

11   relevance to a courtroom that he's not even

12   been in. Ask about the courtroom he's been

13   in if you want.

14       MR. MORRISSEY: In regards to notice

15   to the County.

16       MR. CUMMINGS: It doesn't matter. He

17   could still have notice if it was 704. It

18   doesn't matter. So under your line of

19   questioning -- Let me get this on the

20   record. Under your line of questioning, if

21   two -- the first floor and second floor

22   were not accessible but the seventh floor

23   was, what difference does it fucking make?

24   So just ask about the seventh floor. Just

Page 82

1    ask about the seventh floor. It would save

2    us all some time.

3        MS. CARROLL: Tom, can you please ask

4    relevant questions? It's already been an

5    hour and 45 minutes and half of the

6    questions are not relevant to this case.

7    It's relevant to Lacy.

8        MR. MORRISSEY: Are you going to --

9        MS. CARROLL: If you explain the

10   relevance --

11       MR. MORRISSEY: It's relevant in

12   regards to Mr. Gumm's position as the ADA

13   director for the County in regards to his

14   notice and the notice of the County in

15   regards to the accessibility of the

16   Leighton Court Building. That's why it's

17   relevant.

18   BY MR. MORRISSEY:

19     Q    Were any of the holding cells --

20       MR. CUMMINGS: Wait. Wait. Wait.

21   Okay, I object to this question for

22   foundation because you still haven't -- You

23   haven't decided -- First of all, it hadn't

24   been established that the building itself --

Page 83

1    It hasn't been established the building

2    itself needed to be accessible in the first

3    place, but go ahead and ask your fucking

4    question.

5   BY MR. MORRISSEY:

6     Q    Were any of the holding cells that

7    you visited in late June of 2014 accessible for

8    handicapped persons?

9     **A**    **Since I wasn't there to assess**

10   **accessibility but to have a first walkthrough,**

11   **at that time, there was no determination.**

12     Q    What accommodations when you visited

13   the first, third and fifth floor holding cells

14   behind the courtrooms were there for

15   wheelchair-bound detainees?

16     **A**    **I don't know. It was my first visit**

17   **there. I was just learning -- It was the first**

18   **time I had ever been through it.**

19     Q    Did you also inspect the Leighton

20   Court Building in -- on October 22nd, 2014 with

21   Maureen Reagan?

22     **A**    **If that's the date that you had them**

23   **come there, then I was with them while they**

24   **were doing their assessment.**

Exhibit 2 Page 3

MICHAEL GUMM
May 11, 2016

Page 84

```
 1        Q   When you inspected the -- When you
 2   were part of the inspection group on 22nd,
 3   2014, was part of the inspection the ramps
 4   which lead from the bridge to the holding cells
 5   for Courtroom 101?
 6        MS. CARROLL:  And this is the
 7        inspection that was part of the Lacy case
 8        with Judge Gettleman?  That's yes?  Was
 9        that --
10        THE WITNESS:  Yeah, that was it.
11   BY MR. MORRISSEY:
12        Q   Can you answer the question?
13        A   That was the inspection for the Lacy
14   case, yes.
15        Q   So was part of the inspection the
16   ramps?
17        A   For the Lacy case, yes.
18        Q   And did you review the report
19   prepared by Maureen Reagan in the Lacy case in
20   regards to the conditions of the ramp that
21   leads from the bridge to the Courtroom 101?
22        A   The report for the Lacy case, yes.
23        Q   And did you agree that the slope of
24   the ramp -- and would that be the north ramp
```

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 85

```
 1   that leads from the bridge to the holding cells
 2   for 101?
 3        MR. CUMMINGS:  Object to foundation.
 4   BY THE WITNESS:
 5        A   The ramp leads to the elevator that
 6   goes to all floors.
 7   BY MR. MORRISSEY:
 8        Q   But there are two ramps on the
 9   bridge, right?
10        A   Yes.
11        Q   There is a south ramp and there's a
12   north ramp, correct?
13        A   Yes.
14        Q   Does the north ramp lead to the
15   elevator for the holding cells in 101?
16        A   They lead to all the holding cells on
17   the north side of the building.
18        Q   Is Courtroom 101 on the north side of
19   the building?
20        A   Yes.
21        Q   Do you agree -- what -- Do you agree
22   with Ms. Regan's finding in regards to the
23   slope level of the north ramp?
24        A   I had no objection.
```

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 86

```
 1        Q   By "no objection," you mean you would
 2   agree with her measurements?
 3        A   No, I have no objections to it.
 4        Q   I'm going to show you what's been
 5   marked as Plaintiff's Exhibit Number 6.
 6        (WHEREUPON, Plaintiff's
 7        Exhibit No. 6 was marked
 8        for identification.)
 9   BY MR. MORRISSEY:
10        Q   It's a group exhibit, and it contains
11   eight pages and then some photographs.  I would
12   ask you to take a look at that for a moment.
13        MR. CUMMINGS:  I'm going to object to
14        foundation in that while the witness has
15        testified he's reviewed the document, he is
16        not the author of the document and the
17        author of the document has not been
18        disclosed in this case.
19   BY MR. MORRISSEY:
20        Q   You have seen this report before,
21   correct?
22        A   Yes.
23        Q   And --
24        A   I have seen it for the Lacy case.
```

TOOMEY REPORTING
312-853-0648

---

MICHAEL GUMM
May 11, 2016

Page 87

```
 1        Q   The first page of Group Exhibit 6
 2   pertains to the bridge, correct?
 3        A   Yes.
 4        Q   And what is meant by a ramp running
 5   slope as an architect?
 6        A   Running slope is the horizontal
 7   distance compared to the vertical distance or
 8   the vertical rise.
 9        Q   Do either the 2010 ADA standards or
10   the 1991 ADA standards have requirements in
11   regards to the running slope?
12        MR. CUMMINGS:  Object to foundation.
13        Again, it has not been established whether
14        or not this building is required to meet
15        either one of those standards, but you can
16        answer the question.
17   BY THE WITNESS:
18        A   The '91 and the 2010 standards have
19   slope requirements for new construction,
20   alterations or renovations.
21   BY MR. MORRISSEY:
22        Q   What are those requirements?
23        A   Maximum of one to twelve, one rise to
24   twelve inches of run.
```

TOOMEY REPORTING
312-853-0648

Exhibit 2 Page 4

Page 88

1    Q    Does the north ramp comply with --
2  does the north ramp have a one-to-twelve ratio
3  as far as slope?
4    **A    No.  It's not required to meet the**
5  **'91 or 2010 standards.**
6    Q    Does the 1991 or the 2010 have
7  standards in regards to ramp handrails?
8    **A    Does it have handrails, no.**
9    Q    No.  The question is under the 2010
10 ADA standards or the 1991 standards, are there
11 requirements in regards to handrails for ramps?
12   **A    For new construction, alterations and**
13 **renovations, there are.**
14   Q    In September and August of 2014, did
15 the north ramp, which led to the elevator for
16 Courtroom 101 have handrails?
17   **A    No.**
18   Q    Does either the 1991 or the 2010 ADA
19 standards have requirements in regards to an
20 intermediate landing for ramps?
21   **A    For new construction, alterations and**
22 **renovations if you make changes, yes.**
23   Q    What are those standards?
24   **A    It's a max run, maximum run of 30**

Page 90

1  BY THE WITNESS:
2    **A    No, it's both ramps.**
3  BY MR. MORRISSEY:
4    Q    So that's the north and the south
5  ramps?
6    **A    It's standing at the top of the south**
7  **ramp looking north.**
8    Q    And if we turn to page 10, is that
9  another photograph of both ramps off the bridge
10 in the Leighton Court Building?
11   MR. CUMMINGS:  Objection, foundation.
12 BY THE WITNESS:
13   **A    Yes, it's taken from the top of the**
14 **north ramp looking south.**
15 BY MR. MORRISSEY:
16   Q    In August and September of 2014, did
17 you ever observe Carl Wade go up or down the
18 north ramp of the Leighton Court Building?
19   **A    I don't know who Carl Wade is.**
20   Q    Do you have any personal knowledge in
21 regards to how Mr. Carl Wade got up and down
22 the ramps --
23   **A    If I --**
24   Q    Let me finish.  Do you have any

Page 89

1  **feet before there is an intermediate landing.**
2    Q    In August and September of 2014, did
3  the north ramp provide for that intermediate
4  landing?
5    **A    Since it was constructed prior to any**
6  **ADA standards, it was not required but it does**
7  **not have one.**
8    Q    Turning to the Group Exhibit Number
9  6, the first photograph which is marked as
10 Reagan Exhibit 2, page 9; do you see that
11 document?
12   **A    Yes.**
13   Q    Does that appear to be a picture of
14 one of the ramps?
15   MR. CUMMINGS:  Object to foundation.
16   MR. MORRISSEY:  Let me rephrase it.
17 BY MR. MORRISSEY:
18   Q    In Group Exhibit Number 6, Photograph
19 LEI0137, does that appear to be a photograph of
20 one of the ramps off the bridge in the Leighton
21 Court Building?
22   **A    No.**
23   MR. CUMMINGS:  Object to foundation.
24   You can answer.

Page 109

1  of the ADA, correct?
2    **A    Yes, it's a fact.**
3    Q    Does the ADA Act for buildings that
4  are built prior to 1991, do government entities
5  still have to provide any access to disabled
6  individuals for programs and services?
7    **A    They have to provide equal access or**
8  **not -- they have to provide equal -- excuse me,**
9  **equal opportunity to their programs, services**
10 **and activities.**
11   Q    And would that be considered a
12 reasonable accomodation under the ADA?
13   MR. CUMMINGS:  Objection to the form
14   of the question.
15   MS. CARROLL:  Objection to form.
16   MR. MORRISSEY:  Well, let me rephrase
17   the question.
18 BY MR. MORRISSEY:
19   Q    Under the ADA, would Mr. Wade if he
20 was a wheelchair user be entitled to some
21 reasonable accomodation to go up and down the
22 ramps at Leighton in order to attend court?
23   **A    Yes.**
24   Q    In June of 2014, do you know whether

Exhibit 2 Page 5

MICHAEL GUMM
May 11, 2016

Page 110

1   or not the Sheriff or Cook County provided a
2   reasonable accomodation for wheelchair-assisted
3   prisoners to go up and down the ramps?
4          MS. CARROLL:  I'm going to tell you
5      not to answer until he --
6          MR. CUMMINGS:  I have an objection on
7      behalf of the Sheriff in that Carl Wade was
8      not in custody in June of 2014.  So it's
9      beyond the scope of the claims in this
10     case.
11         MS. CARROLL:  For the record, because
12     my throat is on fire, I have given
13     authority for Nick to make objections on
14     behalf of the County as well in case I
15     can't chime in on time.
16  BY THE WITNESS:
17     **A    In June of 2014, I don't know.  I was**
18  **new to the County and just learning.**
19  BY MR. MORRISSEY:
20     Q    In August of 2014, did
21  wheelchair-bound detainees such as Carl Wade
22  have a right to a reasonable accomodation to go
23  up and down the ramps at the Leighton
24  Courthouse?

MICHAEL GUMM
May 11, 2016

Page 111

1          MR. CUMMINGS:  Objection, assumes
2      facts not in evidence.  You can answer.
3   BY THE WITNESS:
4      **A    They would have -- Yeah, they would**
5   **need an accomodation or they could request the**
6   **accomodation.**
7   BY MR. MORRISSEY:
8      Q    As you sit here today, in September
9   of 2014, were you aware of what reasonable
10  accomodation was provided by the County or the
11  Sheriff's Office for wheelchair-bound detainees
12  going up and down the ramp to court at
13  Leighton?
14         MR. CUMMINGS:  I'm sorry, what was
15     the timeframe again?
16         MS. CARROLL:  September of 2014.
17  BY THE WITNESS:
18     **A    I know that -- I'm not -- I don't**
19  **recall the exact timeframe, but I know that the**
20  **accomodation that was provided was officers**
21  **pushing wheelchair detainees up and down the**
22  **ramps.**
23  BY MR. MORRISSEY:
24     Q    Do you have a specific recollection

Exhibit 2 Page 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nicholas Polletta,                    )
                                      )
            *Plaintiff,*               )
                                      )   No. 16·cv·9492
        ·vs·                          )
                                      )   Judge Shadur
Thomas Dart, Sheriff of Cook          )
County, and Cook County, Illinois,    )
                                      )
                                      )
            *Defendants.*              )

## DECLARATION OF NICHOLAS POLLETTA

Under penalty of perjury I state the following statements are true and accurate:

1. My name is Nicholas Polletta. I am presently incarcerated at the Cook County Jail and assigned jail number 2015·0413057.

2. On May 13, 2015, I shattered my right heel. Presently, it is difficult for me to move from place to place and the jail provides a cane, at times, to ambulate.

3. I attend court at Leighton periodically in connection with a criminal case. My last court appearance was on April 13, 2017.

4. To reach my assigned courtroom on April 13, 2017, I was required to navigate up and down a steep ramp in the basement of Leighton with my cane. It was painful and challenging for me to move up and down this ramp.

Dated: April 26, 2017

Nicholas Polletta

Exhibit 3 Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nicholas Polletta,                                )
                                                  )
                    *Plaintiff,*                  )
                                                  )     No. 16-cv-9492
            -vs-                                  )
                                                  )     Judge Shadur
Thomas Dart, Sheriff of Cook                      )
County, and Cook County, Illinois,                )
                                                  )
                                                  )
                    *Defendants.*                 )

# DECLARATION OF RASHEE GRANT

Under penalty of perjury I state the following statements are true and accurate:

1. My name is Rashee Grant. I am presently incarcerated at the Cook County Jail and assigned jail number 2016-1113089.

2. On November 11, 2016, I injured my left foot and hands. I received treatment at a local hospital for these injuries and was transported to the Cook County Jail on approximately November 13, 2016. These injures make it difficult for me to move from place to place.

3. I attend court at Leighton periodically in connection with a criminal case. I believe my last court appearance was on April 11, 2017.

4. During my last court appearance, I was permitted to use crutches to move from place to place.

Exhibit 4 Page 1

5. To reach my assigned courtroom, I was required to navigate up and down a steep ramp in the basement of Leighton with crutches. It was difficult to navigate this ramp because it is steep. Using crutches on this ramp caused my hands to hurt due to my preexisting injury.

6. While I navigated the ramp, I heard at least one officer tell me to take my time.

Dated: April 26, 2017

Rashee Grant

Exhibit 4 Page 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nicholas Polletta,     )
           )
    *Plaintiff,*   )
           ) No. 16-cv-9492
   ·vs·      )
           ) Judge Shadur
Thomas Dart, Sheriff of Cook )
County, and Cook County, Illinois, )
           )
           )
    *Defendants.*  )

# DECLARATION OF DAVID RIVERA

Under penalty of perjury I state the following statements are true and accurate:

1. My name is David Rivera. I am presently incarcerated at the Cook County Jail and assigned jail number 2015-0908025.

2. I suffer chronic back and hip pain. To move from place to place, I require the assistance of an ambulatory aid.

3. As an inmate in 2015, I attended court at Leighton.

4. To reach the courthouse, I was required to move up and down a steep ramp in the basement of Leighton.

5. During one court appearance, I requested that a correctional officer provide an accommodation for me to navigate the ramp. Despite this request, I was not provided help moving up or down the ramp.

Dated: April 26, 2017

X _David Rivera_
David Rivera

Exhibit 5 Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHNATHAN LACY, KENNETH FARRIS, )
MARQUIS BOWERS, MAURICE )
BOSTON, KEVIN DAWSON, individually )
and for all others similarly situated, )
)
        Plaintiffs, )   No.  14 C 6259
   v. )
)   Judge Robert W. Gettleman
THOMAS DART, SHERIFF OF COOK )
COUNTY, COOK COUNTY, )
ILLINOIS, SGT. JOHNSON, CORRECTIONAL )
OFFICER NAWARA, CORRECTIONAL )
OFFICER LOPEZ, CORRECTIONAL )
OFFICER WILSON, )
)
        Defendants. )

### ORDER

This matter comes before the court pursuant to the court's earlier order (doc. 203).  For

the reasons discussed on the record, it is hereby ordered:

1.    Defendant Sheriff shall amend section IX.H of Sheriff's Order 11.14.35.0 to read as

    follows:

    H.    Arrests, Bookings, Court Remands and Court Appearances

        1.    Absent specific and articulable safety or security concerns, CCSO

            members shall provide assistance to wheelchair-using subjects who are in

            CCSO custody. This includes but is not limited to:

            a.    Pushing subjects up and down ramps in CCSO facilities; and

            b.    Upon request, escorting any subject who is unable to use a

                provided commode chair to the nearest ADA accessible restroom.

Exhibit 6 Page 1

   c.  Wheelchair-using subjects may refuse assistance, but members should provide them reasonable accommodations, and document any refusal of assistance and any incident in which assistance was not provided pursuant to section H.

  2.  When booked, under a court remand or required to appear in court at an outlying court facility, a subject with a mobility disability who requires the use of a wheelchair shall be:

   a.  Transported in a lift-equipped and ADA compliant CCSO vehicle;

   b.  Safely secured within the vehicle; and

   c.  Placed in an accessible holding cell; or

   d.  Placed in a holding cell with a commode chair, if the subject is able to use a commode chair.

2. Plaintiffs' motion (doc. 233) for entry of judgment pursuant to Rule 54(b) is denied.

3. The parties are directed to file a pretrial order on the issue of individual damages, using this court's form, on or before February 5, 2016. This matter is set for an initial pretrial conference on February 18, 2016, at 10:30 a.m.


**ENTER:**  **January 5, 2016**

         **Robert W. Gettleman**
         **United States District Judge**

2

Exhibit 6 Page 2